UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18-cv-81450-KAM – MARRA/MATTHEWMAN

MICHAEL GIELLO,

      Plaintiff,

      vs.

OCWEN LOAN SERVICING, LLC ,

      Defendant.

_____

**DEFENDANT OCWEN LOAN SERVICING, LLC'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Mr. Giello alleges that Ocwen called his cellular telephone without his consent in violation of the Telephone Consumer Protection Act ("TCPA"); 47 U.S.C. § 227(b)(1)(A)(iii), and with such frequency as could reasonably be expected to harass in violation of the Florida Consumer Collection Practices Act ("FCCPA"); Fla. Stat. § 559.72(7).  But TCPA liability rests on a showing that the calls were made using an automated telephone dialing system ("ATDS"), and Mr. Giello does not allege, with facts that support a plausible claim, that Ocwen called him using an ATDS.  Furthermore, Mr. Giello does not allege sufficient facts within the two-year statute of limitations period to show that Ocwen's conduct was harassing under the FCCPA.  His claims should therefore be dismissed.

**THE ALLEGATIONS IN THE COMPLAINT**

Mr. Giello claims that, in an attempt to collect on his mortgage loan debt, Ocwen made hundreds of calls to his cellular telephone after he revoked consent to receive calls on that number.  (Compl. at ¶¶ 16, 20 and 21).  But his Complaint contains purely conclusory allegations.  Specifically, he claims that Ocwen placed the calls "using an 'automated telephone

- 1 -

dialing system' . . . as specified by 47 U.S.C. § 227(a)(1)"; that Ocwen placed hundreds of autodialed calls to his cellular telephone; and that the calls caused "stress, nervousness, anger, worry, and aggravation." (Compl. at ¶¶ 16, 18, and 41). Indeed, the few facts that he does allege support a conclusion that the equipment used to dial his cellular telephone is <u>not</u> of the type governed by the TCPA. Moreover, Plaintiff's FCCPA claim is unsupported by any facts showing that Ocwen engaged in harassing conduct within applicable the two-year statute of limitations period.

## <u>ARGUMENT</u>

### I.     The Standard on Motion to Dismiss

The Court should dismiss a complaint for failure to state a claim when the pleading lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). On a motion to dismiss, a court asks whether the plaintiff pleads facts entitled to an assumption of truth, or just legal conclusions which are not entitled to such deference. If the plaintiff pleads facts, and not mere legal conclusions, the Court asks whether those facts are sufficient to give rise to a reasonable inference of liability. <u>Id.</u> at 679. A statute of limitations defense is properly asserted on a motion to dismiss "where the complaint affirmatively shows that the claim is barred." <u>Skye v. Maersk Line Corp.</u>, No. 11–21589–CIV, 2011 WL 4528305, at *2 (S.D. Fla. Sept. 28, 2011) (emphasis omitted) (quoting <u>United Transp. Union v. Fla. E. Coast Ry. Co.</u>, 586 F.2d 520, 527 (5th Cir. 1978)). "When the time-bar is apparent from the face of the complaint, the plaintiff bears the burden of pleading allegations sufficient to toll the statute of limitations." <u>Heuer v. Nissan N. Am., Inc.</u>, No. 17-60018-Civ, 2017 WL 3475063, at *4 (S.D. Fla. Aug. 11, 2017). If a district court has dismissed all claims over which it has original jurisdiction, the court has

discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over any remaining state-law claims.  28 U.S.C. § 1367(c)(3).

II.     **The Court should dismiss Mr. Giello's TCPA claim because he does not allege Ocwen called him using an automatic telephone dialing system, as the TCPA requires.**

     A.     <u>To qualify as an ATDS, Ocwen's dialing system must have the present capacity to generate random or sequential numbers.</u>

Congress passed the TCPA in 1991 to "protect the privacy interests of residential telephone subscribers" by restricting the use of "unsolicited, automated telephone calls" and faxes.  S. REP. 102-178 ("Senate Report"), at 1 (Oct. 8, 1991).  The TCPA restricts calls using an ATDS, which the statute defines as a device having the "capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  The statute's restrictions on calls made using an ATDS reflected Congress's finding that randomly and sequentially dialed numbers posed a particular problem for consumers, since they had no means of protecting themselves from such indiscriminate calls.  The Senate found that "[c]onsumers are especially frustrated because there appears to be no way to prevent these calls. . . .  <u>Having an unlisted number does not prevent those telemarketers that call numbers randomly or sequentially.</u>"  Senate Report at 1969 (emphasis added); <u>see also</u> PL 102-243 § 2(11) (Dec. 20, 1991) (noting ineffectiveness of methods consumers might use to protect themselves from calls to randomly and sequentially dialed numbers).

The House similarly recognized that the sharp rise in unlisted numbers in the 1980s was an indicator of consumers' desire "to free themselves from intrusive telemarketing practices," but that such efforts by consumers to protect themselves were foiled by indiscriminate calling practices in which "[t]elemarketers often program their systems to dial sequential blocks of

telephone numbers, which have included . . . unlisted telephone numbers." H.R. REP. 102-317 ("House Report"), at 9-10.

The legislative history shows that Congress aimed the TCPA at <u>indiscriminate</u> calling and faxing intended to solicit new potential customers—not at calls targeting specific individuals, such as those by debt collectors. House Report, at 14, 16. In its first rulemaking on the TCPA in 1992, the FCC acknowledged that the TCPA's restrictions applied only to calls "dialed using a random or sequential number generator." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8773 and 8776 (1992) ("1992 Order") (recognizing the TCPA's restrictions "clearly do not apply" to automated but targeted dialing functions, "because the numbers called are not generated in a random or sequential fashion"). Thus, the 1992 Order acknowledged that debt collection calls are not "autodialer calls" because calls to collect a debt are not dialed randomly or sequentially. 1992 Order at 8773. Both the Seventh Circuit and the Third Circuit have recognized that the FCC initially interpreted the statute to apply only to dialers that randomly or sequentially generated numbers.[1] <u>Blow v. Bijora, Inc.</u>, 855 F.3d 793, 800 (7th Cir. 2017) ("[T]he FCC initially interpreted the TCPA autodialer ban as targeting equipment that placed many calls by randomly or sequentially generating numbers to be dialed."); <u>Dominguez v. Yahoo, Inc.</u>, 629 F. App'x 369, 372 (3d Cir. 2015) ("[T]he FCC initially interpreted the statute as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed.").

---

[1]    In its brief in <u>ACA Int'l v. FCC</u>, the FCC acknowledged that its 1992 Order held that debt collection calls were not subject to the TCPA's autodialer restrictions. ACA Brief for Respondents, No. 15-1211 (Doc. # 1600585) (D.C. Cir. Jan. 15, 2016), at 14 n.5 ("The [2015 Order] superseded past [FCC] statements suggesting that debt collection calls fell outside the autodialer restrictions.") (citing ACA Int'l's 2005 petition [Doc. # 1599712, at JA103], which referred to the 1992 Order in which the FCC stated that debt collection calls are not subject to the TCPA's autodialer restrictions because they are not random or sequential).

The FCC's 1992 Order closely tracked the statutory definition of an ATDS by requiring that devices dial random or sequential numbers to fall within the scope of the TCPA.[2]  1992 Order at 8792.  But in 2003, the FCC changed its policy and issued rules applying the TCPA's restrictions even to dialing systems that did not generate random or sequential numbers.  The FCC found that telemarketers had largely abandoned indiscriminate dialing to random or sequential numbers, and determined that the definition of an ATDS in the TCPA included "predictive dialers" — devices that dial numbers from lists — even when they were not able to generate and dial random or sequential numbers.[3]  In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14092- 93 (2003) ("2003 Order").  That definition was repeated in a 2008 Order when the FCC reaffirmed its finding that predictive dialers are ATDSs.  In re Rules & Regulations Implementing the Tel. Consumer Prot. Act, 23 FCC Rcd. 559, 566 (2008) ("2008 Order") (citing 2003 Order at 14091-92).  And that definition was asserted yet again in 2015, where the FCC said that "[w]e reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') . . . including when the caller is calling a set list of consumers.  We also reiterate that predictive dialers . . . satisfy the TCPA's definition of 'autodialer' for the same reason."  In re Rules & Regulations Implementing

---

[2]    ACA Brief for Respondents, 2016 WL 194146, at *12 ("In its initial rulemaking to implement the TCPA, the Commission adopted a definition of autodialer that simply reiterates the statutory language.").

[3]    The FCC characterized a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."  2003 Order, at 9 n.31.  Such devices typically do not generate and dial random or sequential numbers, but rather dial from a list of specific numbers.  Id. at 14091 ("[I]n most cases, telemarketers program the numbers to be called into the [predictive dialer], and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.").

the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7971-72 (2015) ("2015 Order") (citing 2003 Order at 14091-92 and 2008 Order at 566); see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15392 n.5 (2012) ("2012 Order") (definition of an ATDS included systems with the "capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers") (citing 2003 Order at 14091-93) (emphasis added).  Separately, the 2015 Order also concluded that equipment's "capacity" to dial random or sequential numbers is not limited to its "present ability," but also includes its "potential functionalit[y]."  2015 Order at 7972, 7974.

Thus, between 2003 and this year, the FCC's now vacated re-interpretation of the statute could not be challenged in the trial courts, because the law was that, despite the statutory definition of an ATDS, a dialer which calls phone numbers from a pre-determined list but which does not dial numbers randomly or sequentially is an ATDS.  However, the D.C. Circuit vacated the FCC's 2003, 2008, 2012, and 2015 Orders in ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018).[4]  First, ACA set aside the FCC's interpretation of an ATDS as including predictive dialers

---

[4]	There has been some dispute as to whether ACA vacated just the FCC's 2015 Order, or whether, in addition, it also vacated all of the FCC's Orders in which it held that a dialer was an ATDS even though it could not generate random or sequential numbers.  The great majority of courts have held that ACA vacated all the FCC's Orders.  See, e.g., Johnson v. Yahoo!, Inc., No. 1:14-cv-02028, 2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018) (agreeing with those courts that have concluded that the FCC's prior orders are no longer binding); Gonzalez v. Ocwen Loan Servicing, LLC, No. 5:18-cv-340-Oc-30PRL, 2018 WL 4217065, at *5 (M.D. Fla. Sept. 5, 2018) (agreeing with Ocwen that ACA overturned the prior FCC Orders); Gary v. TrueBlue, Inc., No. 17-cv-10544, 2018 WL 3647046, at * 6 (E.D. Mich. Aug. 1, 2018) (holding that "the FCC's rulings – including the ATDS definition which covered equipment that can only dial numbers from a set list – are no longer valid."); Pinkus v. Sirius XM Radio, Inc., No. 16 C 10858, 2018 WL 3586186, at *6 (N.D. Ill. Jul. 26, 2018) ("[I]t necessarily follows that [ACA] invalidates not only the 2015 Declaratory Ruling's understanding that all predictive dialers qualify as ATDSs, but also the 2003 Order and 2008 Declaratory Ruling to the extent they express the same understanding."); Sessions v. Barclays Bank Delaware, No. 1:17-cv-01600-LMM, 2018 WL 3134439, at * 4 (N.D. Ga. Jun. 25, 2018) (holding that because the 2003 and 2008 FCC Orders "had said the same" as the 2015 FCC Order regarding the interpretation of an ATDS, by vacating

and other devices that are not capable of generating and dialing random or sequential numbers on the grounds that in expanding its interpretation to cover such devices, the FCC "fail[ed] to satisfy the requirement of reasoned decisionmaking." Id. at 703. Further, the D.C. Circuit found that the FCC's expansive definition of an autodialer would, in effect, "render every smartphone an ATDS," because every smartphone has the capacity to dial numbers from a stored list. Id. at 697-98. Second, it rejected the FCC's 2015 determination that a device is an ATDS as long as it can be reconfigured to generate and dial random or sequential numbers. Id. at 700 (FCC's 2015 interpretation of 'capacity' was "an unreasonably, and impermissibly, expansive one"); accord King v. Time Warner Cable Inc., 894 F.3d 473, 478 (2d Cir. 2018).

Post-ACA, courts are to give no deference to the FCC's vacated interpretations.[5] Thus, the only remaining FCC guidance as to the statutory definition of an ATDS is the 1992 Order,

_____

the 2015 interpretation, the D.C. Circuit also vacated the 2003 and 2008 interpretations); Herrick v. GoDaddy.com LLC, No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018) ("[T]he [ACA] court 'set aside' the FCC's interpretations of 'using a random or sequential number generator.'"); Marshall v. CBE Grp., Inc., No. 2:16-cv-02406-GMN-NJK, 2018 WL 1567852, at *4-5 (D. Nev. Mar. 30, 2018) (holding that ACA set aside the FCC's interpretation of an ATDS).

   In Reyes v. BCA Fin. Servs., Inc., 312 F. Supp. 3d 1308, 1321 (S.D. Fla. May 14, 2018) the Court held that the 2003 and 2008 FCC interpretations could not have been vacated by ACA because "the time to appeal those orders had long passed." But, as Judge Moody notes in Gonzalez, the D.C. Circuit itself expressly considered and rejected that argument when it was made by the FCC in ACA. 2018 WL 4217065, at *5 (citing ACA, 885 F.3d at 701) ("According to the [FCC], because there was no timely appeal from those previous orders, it is too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones. We disagree."). Since the Reyes decision, the Ninth Circuit in Marks v. Crunch San Diego, LLC, 904 F. 3d 1041, 1049 (9th Cir. 2018), held that the "D.C. Circuit vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains." In Adams v. Ocwen Loan Servicing, LLC, No. 18-81028-CIV-DIMITROULEAS, 2018 U.S. Dist. LEXIS 184513, at *7-8 (S.D. Fla. Oct. 26, 2018), Judge Dimitrouleas agreed with Ocwen and the Ninth Circuit that the FCC's prior rulings had been vacated by ACA. ("However, as Defendant argues, the FCC's 2003 and 2008 Orders' interpretation of the statutory meaning of an ATDS were voided and vacated by the D.C. Circuit's recent decision in ACA, which struck down the FCC's 2015 Order interpreting what devices should be considered ATDSs under the TCPA.").

[5]       28 U.S.C. § 2342(1); King, 894 F.3d at 476 n.3.

which was not vacated by <u>ACA</u>.[6]  Although the 1992 Order was specifically targeted at calls placed to residential phones, it is instructive, because in it the FCC confirmed that the TCPA was designed to prohibit calls placed using technology that can randomly or sequentially generate phone numbers and concluded that calls made from a set list, such as debt collection calls, are not subject to the TCPA "because such calls are not autodialer calls (i.e., dialed using a random or sequential number generator)."  1992 Order at 8773.  The 1992 Order is in accord with the legislative history and intent behind the enactment of the TCPA, which, as discussed above, was drafted to prevent indiscriminate telemarketing calls.

Following the D.C. Circuit's <u>ACA</u> ruling, courts across the country, including the Second and Third Circuits, have similarly interpreted the statutory text of the TCPA to mean that a system must be capable of generating numbers randomly or sequentially and then dialing those numbers.  See <u>Dominguez v. Yahoo, Inc.</u>, 894 F. 3d 116, 121 (3d Cir. 2018) (granting summary judgment in favor of Yahoo because plaintiff had provided no evidence that the defendant's dialer "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"); <u>King</u>, 894 F. 3d at 479 (holding that only a device that "currently has features that enable it to perform the functions of an autodialer" (i.e., generate and dial random or sequential numbers) is an ATDS); <u>Roark v. Credit One Bank, N.A.</u>, Civ. No. 16-173 (PAM/ECW), 2018 U.S. Dist. LEXIS 193252, at * 7 (D. Minn. Nov. 13, 2018)

---

[6]      It is well-established that when a rule is vacated, the prior rule is reinstated, as if the vacated rule had never been adopted.  <u>E.g.</u>, <u>Alabama Envtl. Council v. Adm'r, U.S.E.P.A</u>, 711 F.3d 1277, 1292 (11th Cir. 2013) ("Because the April 6, 2011, final rule is vacated, the October 15, 2008, final rule approving the revisions stands as the last final action taken on the proposed revision."); <u>Prometheus Radio Project v. FCC</u>, 652 F.3d 431, 454 n.25 (3d Cir. 2011) ("Because we vacate the NBCO rule in the 2008 Order, the rule in existence prior to that order will remain in effect until the FCC promulgates new cross-ownership regulations."); <u>Paulsen v. Daniels</u>, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force.").

("[T]he correct inquiry is whether a device can generate numbers to dial either randomly or sequentially."); Glasser v. Hilton Grand Vacations Co., LLC., 8:16-CV-952-JDW-AAS, 2018 WL 4565751, at *4 (M.D. Fla. Sept. 24, 2018) (device was not an ATDS because "[n]othing in the record demonstrates that Defendant's IMC System generated numbers and then called them"); Keyes v. Ocwen Loan Servicing, LLC, 17-cv-11492, 2018 WL 3914707 (E.D. Mich. Aug. 16, 2018) (holding on summary judgment that Ocwen's dialing system is not an ATDS post-ACA); Lord v. Kisling, Nestico & Redick, LLC, 1:17-CV-01739, 2018 WL 3391941, at *8-9 (N.D. Ohio July 12, 2018) (dismissing complaint because plaintiffs failed to allege dialer had the present ability to store or produce telephone numbers to be called using a random or sequential number generator); Herrick, 312 F. Supp. 3d at 800(statute requires "the numbers be stored or produced using a random or sequential number generator") (emphasis in original). Consistent with these rulings, a federal court has definitively already held that Ocwen's dialer system — the same one at issue in this case — does not constitute an ATDS under the TCPA. Keyes, 2018 WL 3914707 at *8-9 (holding on summary judgment that Ocwen's dialing system is not an ATDS post-ACA).

The Ninth Circuit, in Marks v. Crunch San Diego, LLC, 904 F. 3d 1041 (9th Cir. 2018), held that the TCPA's definition of an ATDS was satisfied by a device that can either (1) store numbers to be called or (2) randomly or sequentially generate numbers to be called. Marks was wrongly decided, for a number of reasons.[7]

First, Marks interpreted the TCPA without regard to its legislative history, which shows that to be an ATDS a device must be able to generate random or sequential numbers. In its 1992 Order, the FCC clearly understood this to be the intent of the statute. See 1992 Order at 8773

---

[7]    In Adams, 2018 U.S. Dist. LEXIS 184513, at *8, the Court followed Marks and held that it was enough for a device to be an ATDS that it can store numbers to be called.

("autodialer calls" were "dialed using a random or sequential number generator"), 8776 (stating the prohibitions of § 227(b)(1) <u>do not apply</u> to functions like "speed dialing" and "call forwarding," because numbers are "not generated in a random or sequential fashion") (emphasis added).

<u>Second</u>, the <u>Marks</u> court's interpretation of the TCPA relied heavily on the fact that Congress did not act to overturn the FCC's 2003 and later Orders making predictive dialers which do not generate random or sequential numbers into an ATDS. But the Supreme Court has long held that "[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction." <u>Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A. et al.</u>, 511 U.S. 164, 187 (1994); <u>Bruesewitz v. Wyeth LLC</u>, 562 U.S. 223, 242 (2011) ("Postenactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

<u>Third</u>, <u>Marks</u> revived the very overbreadth problem that <u>ACA</u> ruled was "impermissible" because the holdings "render every smartphone an ATDS" because they have the capacity to make "calls automatically from a stored list." <u>ACA</u>, 885 F.3d at 697-98. For example, smartphone users can call stored numbers by tapping on a party's name in the contacts list, without having to manually dial or press a 10-digit number, or can program phones to send scheduled messages or auto-replies. <u>Marks</u> therefore contravened <u>ACA</u>, which is binding authority under the Hobbs Act and expressly holds that an ATDS cannot be broadly construed in such a way that every one of the over 224 million smartphones in the United States would qualify as an ATDS.

On November 29, 2018, the Northern District of Illinois, specifically considered the Ninth Circuit's reasoning in <u>Marks</u> and determined that the Ninth Circuit's interpretation of the TCPA is inconsistent with the text of the statute.  <u>Johnson v. Yahoo!, Inc.</u>, 2018 WL 6426677, at *2.  In <u>Johnson</u>, the Court found that the text of the TCPA is not "ambiguous" as the <u>Marks</u> court held.  <u>Id.</u>  Rather, "[t]he phrase 'using a random or sequential number generator' applied to the numbers to be called and an ATDS must either store or produce those numbers (and then dial them).  Curated lists developed without random or sequential number generation capacity fall outside the statute's scope." <u>Id.</u> The Court specifically addressed whether such an interpretation would render the word "store" superfluous, and found that it would not.  "The word 'store' ensures that a system that generated random numbers and did not dial them immediately, but instead stored them for later automatic dialing . . . is an ATDS." <u>Id.</u> at n.4.

This Court should follow the overwhelming body of case law holding that to plead a violation of the TCPA, a plaintiff must be able to allege facts supporting the conclusion that a device be capable of generating random and sequential numbers.

> B.    <u>Mr. Giello does not allege that Ocwen called him using a system capable of generating random or sequential numbers.</u>

The totality of Mr. Giello's pleading that he was called using an ATDS is this:

> Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").  Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause or beep when he answered his phone before a voice came on the line, which is a common indicator of the use of an ATDS.  Further, Plaintiff received pre-recorded messages from Defendant.

(Compl. at ¶ 18).

The first sentence of this allegation simply recites the statutory definition of an ATDS. But a plaintiff cannot satisfy his pleading burden merely by reciting the elements of his claims. See Iqbal, 556 U.S. at 678 (holding that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not pass muster); see also Weaver v. Wells Fargo Bank, N.A., No. 8:15-cv-1247-T-23TGW, 2015 WL 4730572, at *3 (M.D. Fla. Aug. 10, 2015) ("To state a claim under Section 227(b)(1)(A)(iii), a plaintiff must plausibly allege – not merely assert – facts suggesting that the defendant used a [sic] automated telephone dialing system."); Duran v. Wells Fargo Bank, N.A., 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (dismissing TCPA claim because plaintiff provided no facts whatsoever probative of autodialing).

Nor does the second sentence of this allegation suffice, for it claims in a conclusory manner only that Ocwen used a dialing system – i.e., that the calls were not made by an operator manually punching in numbers and waiting for him to answer. The allegation contains no facts to indicate that Ocwen's dialing system was an ATDS – i.e., that it had the capacity to generate and dial random or sequential numbers.

Indeed, the few facts Mr. Giello does allege in this paragraph contradict his claim that the calls were randomly or sequentially generated. A plaintiff might sufficiently allege the use of an ATDS by alleging facts about the content or context of the calls. See, e.g., Gragg v. Orange Cab Co., No. C12–0576RSL, 2013 WL 195466, at *3 n.3 (W.D. Wash. Jan. 17, 2013) (allegations of the use of an ATDS generally must rely on allegations as to the "content of the message, the context in which it was received, and the existence of similar messages"). So, for instance, being called by a complete stranger for no apparent reason—the sort of consumer complaints that prompted passage of the TCPA—may suggest the use of a random or sequential dialer, and so might be the basis for concluding an ATDS was used. Thus, in Drew v. Lexington Consumer

*Advocacy, LLC*, No. 16-cv-00200-LB, 2016 WL 1559717, at *5 (N.D. Cal. Apr. 18, 2016), the court held that the plaintiff had adequately alleged the use of an ATDS when he alleged he had received "impersonal advertisements" from a defendant with whom he had "no reason to be in contact." But here, the facts that Mr. Giello alleges about the content and context of the calls he received show that Ocwen's calls were not randomly or sequentially generated.

First, the Complaint makes clear that Ocwen is no stranger to Mr. Giello. He alleges that Ocwen called him in an "attempt to collect a debt" in connection with a home loan." (Compl. at ¶¶ 16, 17, and 20). These facts are not consistent with random or sequential dialing, and so Mr. Giello fails to state a plausible claim that the calls were made using an ATDS. See, e.g., *Dominguez*, 894 F.3d at 121 (holding that the TCPA was "not the proper means of redress" for texts sent "because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation"); *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016) (dismissing TCPA claim because the facts alleged suggested text messages were "targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers" and nothing otherwise suggested that the texts were sent "en masse to randomly or sequentially generated numbers");[8] *Freidman v. Massage Envy Franchising, LLC*, No. 3:12–cv–02962–L–RBB, 2013 WL 3026641, at *1-2 (S.D. Cal. June 13, 2013) (plaintiffs failed to allege use of ATDS when "[i]t is just as conceivable that the text messages were done by hand, or not using an

---

[8] Duguid's amended complaint was also dismissed for failure to allege the use of an ATDS. *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2017 WL 635117, at *4 (N.D. Cal. Feb. 16, 2017), appeal docketed, No. 17-15320 (9th Cir. Feb. 23, 2017) ("[W]here a '[p]laintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS,' courts conclude that the allegations are insufficient to state a claim for relief under the TCPA.") (quoting *Flores v. Adir Int'l, LLC*, No. CV 15 00076 AB (PLAx), 2015 WL 4340020, at *4 (C.D. Cal. July 15, 2015)). That decision is currently on appeal to the Ninth Circuit.

- 13 -

ATDS," and text messages "differ enough to make it appear as if an ATDS was not utilized"); Johansen v. Vivant, Inc., No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (dismissing for failure to allege facts showing the use of an ATDS; "[i]t is not unreasonable, . . . to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS").

Second, Mr. Giello's allegation that Ocwen made repeated calls to his cellular telephone is also inconsistent with his claim that Ocwen used an ATDS.  Indeed, the allegation that he received multiple calls from Ocwen virtually eliminates the possibility that Ocwen was dialing random or sequential numbers rather than specifically calling its customer.  E.g., Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1295 (11th Cir. 2010) (allegations are implausible under Twombly and Iqbal when there is an "obvious alternative explanation" that does not show plaintiff is entitled to relief); Iqbal, 556 U.S. at 681 (allegations were too implausible to state a claim given existence of "more likely explanations" for facts alleged); Twombly, 550 U.S. at 555 (requiring plaintiff to plead facts sufficient to "raise a right to relief above the speculative level").

Third, the allegation that Ocwen used a device that can randomly or sequentially generate and dial numbers is in any event inherently implausible, for such a function would be useless to Ocwen, which is in the business of servicing mortgage loans owed by a specific and defined list of customers.  No company whose business requires it to call particular individuals efficiently would rely on a device that dialed random or sequential numbers.  Ashcroft, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss"); see also Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1343 (11th Cir. Dec. 2, 2010) ("[I]f the factual context renders [the [plaintiffs'] claim implausible – if the claim is one that simply makes

Case 9:18-cv-81450-RLR   Document 10   Entered on FLSD Docket 12/17/2018   Page 15 of 20

no economic sense – [the plaintiffs] must come forward with more persuasive evidence to support their claim than would otherwise be necessary") (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In sum, Mr. Giello fails to plead sufficient facts showing that Ocwen called him using an ATDS, and the allegations he does make are inconsistent with and contradict any suggestion that his cellular telephone number was dialed randomly or sequentially.

Mr. Giello also alleges that he received calls using "an artificial or pre-recorded voice." (Compl. at ¶¶ 18 and 44).  Mr. Giello does not plead any facts to plausibly support this claim. Without more, his allegations cannot support the finding that Ocwen placed calls using an artificial or prerecorded voice.  See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a cause of action).

**III.    This Court should dismiss Mr. Giello's FCCPA claim.**

Mr. Giello alleges that Ocwen violated the FCCPA, claiming that the calls that he received were so numerous as to constitute harassment pursuant to Fla. Stat. § 559.72(7). However, Mr. Giello's FCCPA claim fails because: (1) his claim is barred by the two-year statute of limitations period for the FCCPA; (2) he has failed to allege sufficient facts to show that Ocwen's conduct was harassing; and (3) this Court lacks supplemental jurisdiction over Mr. Giello's FCCPA claim.

A.    The Court should dismiss Plaintiff's FCCPA claim to the extent it is barred by the two-year statute of limitations.

Under the FCCPA, a civil action must be commenced within two years after the date of the alleged violation.  See Fla. Stat. § 559.77(4).  Mr. Giello filed his Complaint on October 25, 2018.  Therefore, any conduct that occurred before October 25, 2016 cannot give rise to a claim

under the FCCPA. Mr. Giello does not specifically allege when the calls at issue allegedly occurred, except to state that he revoked consent in 2014. (Compl. at ¶ 22). There are no specific allegations that he received calls after 2014 and, if so, how many. And, there is no allegation that any calls were received after October 25, 2016. "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred." Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. Nov. 25, 2013). In this case, the Complaint is devoid of any facts that plausibly support a claim that any calls were received after October 25, 2016. Therefore, Mr. Giello's FCCPA claims are time-barred and should be dismissed.

      B.    <u>Mr. Giello failed to allege any facts to show that Ocwen's conduct was harassing pursuant to § 559.72(7) of the FCCPA.</u>

Mr. Giello's FCCPA claim fails because he pleads no facts to plausibly support his claim that Ocwen's conduct was harassing.

Plaintiff brings his FCCPA claim pursuant to § 559.72(7) of the FCCPA, which makes it unlawful to "willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass." Fla. Stat. § 559.72(7). "Courts evaluate claims under the FCCPA and the Fair Debt Collection Practices Act ("FDCPA") using the same standards. 'With the exception of the federal law's requirement that a defendant be a 'debt collector,' the requirements to state a claim under the federal law and the state law are identical.'" See Galle v. Nationstar Mortg., LLC, No. 2:16-407-FtM-PAM-CM, 2018 WL 3390235, at *2 (M.D. Fla. Jan. 5, 2018).

Mr. Giello fails to allege even a single fact to show that the frequency of the calls is sufficient to constitute harassment under the FCCPA. Mr. Giello claims that he received hundreds of phone calls from Ocwen. (Compl. at ¶ 16). There are no allegations specifying

when the calls at issue occurred, except that Mr. Giello alleges that he was receiving calls at least as early as 2014—four years ago.  (Compl. at ¶ 22).  Plaintiff alleges nothing more about the frequency and timing of the calls, except that he received up to three calls per day, multiple days per week.  (Compl. at ¶ 23).  However, even taking Mr. Giello's claims as true, there is insufficient evidence to support a finding that Ocwen's conduct was harassing.  See, e.g., Wolhuter v. Carrington Mortg. Servs., LLC, No. 8:15-cv-552-MSS-TBM, 2015 WL 12819153, at *3 (M.D. Fla. Oct. 28, 2015) ("[C]ourts generally have held that one or two phone calls per day are not sufficient to violate the FDCPA or its state analogues, absent evidence of other egregious conduct associated with the calls."); see also Tucker v. Malcolm S. Gerald and Assocs., Inc., No. 3:09-cv-1183-J-12JRK, 2010 WL 1223912, at *2 (M.D. Fla. Mar. 24, 2010) (dismissing plaintiff's complaint for failure to state a claim because "[p]laintiff's Complaint does not describe the number, frequency or pattern of calls to support his conclusory allegations. . ."); Bonanno v. New Penn Fin., LLC, No. 5:17-cv-229-OC-30PRL, 2017 WL 3219517, at *5 (M.D. Fla. Jul. 28, 2017) (holding that the allegation that plaintiff received "multiple calls" was insufficient to support a claim under the FDCPA); Owens-Benniefield v. Nationstar Mortg., LLC, 258 F. Supp. 3d 1300, 1310 (M.D. Fla. Jun. 15, 2017) (dismissing plaintiff's claim because the allegations that the defendant "placed multiple automated calls per day" for "several months" was insufficient to state a claim for harassment under the FDCPA.); Tucker v. CBE Group, Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. May 5, 2010) (holding that seven calls in a single day was insufficient to show harassment under the FDCPA.  In this case, Plaintiff's allegations are insufficient to demonstrate that the frequency of calls is sufficient to constitute harassment under the FCCPA.

Mr. Giello also fails to plead facts to show that Ocwen engaged in "other conduct" that

can reasonably be expected to harass.  In <u>Gonzalez</u>, where Plaintiff filed a nearly identical

Complaint, the court held that

> [Plaintiff's] allegations are limited to Ocwen communicating with him and the
> incidental effects of those communications . . . This conduct does not amount to
> "other conduct" under § 559.72(7), which would instead include allegations like a
> debt collector making threats or using abusive language during phone calls or in
> letters; falsely reporting claimants to credit bureaus; or attempting to collect
> illegitimate debts.

<u>Gonzalez</u>, 2018 WL 4217065, at *8.  Similarly, Mr. Giello has not alleged any facts about the

calls themselves to show that Ocwen's conduct was harassing.

Because Plaintiff fails to allege sufficient facts to show that Ocwen engaged in conduct

which violates § 559.72(7) of the FCCPA, his claim should be dismissed.

C.    <u>Plaintiff's FCCPA claim should be dismissed for lack of subject-matter
jurisdiction.</u>

Plaintiff bases his allegations that this Court has supplemental jurisdiction over his state-

law claim for FCCPA violations on his TCPA claims.  (Compl. at ¶ 7).  But because he has not

stated a claim for violation of the TCPA, the Court should decline to exercise supplemental

jurisdiction and dismiss Plaintiff's FCCPA claim.  28 U.S.C. §1367(c)(3); <u>see, e.g.</u>, <u>Nolin v.

Isbell</u>, 207 F.3d 1253, 1258 (11th Cir. 2000) (dismissing state law claims where federal claims

had also been dismissed); <u>Brown v. Kopolow</u>, No. 10-80593-CIV, 2011 WL 283253, at *3-4

(S.D. Fla. Jan. 25, 2011) (Marra J.) ("a district court is well within its discretion to dismiss state

law claims once the basis for original federal court jurisdiction no longer exists"); <u>Keyes</u>, 2018

WL 3914707, at *9 (declining to exercise supplemental jurisdiction over state law claims

remaining after grant of summary judgment in favor of Ocwen).

## CONCLUSION

For the reasons described in this motion and incorporated memorandum, Defendant

Ocwen Loan Servicing, LLC, respectfully requests that the Court dismiss Plaintiff's Complaint

in its entirety.

Dated: December 17, 2018

Respectfully submitted,

*/s/ Aliza Malouf*
Aliza Malouf
Florida Bar No. 1010546
Hunton Andrews Kurth LLP
1445 Ross Avenue, Ste. 3700
Dallas, TX 75202
(214) 979-8229
amalouf@huntonak.com

*Counsel for Defendant Ocwen Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I certify that on December 17, 2018, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/Aliza Malouf*
Aliza Malouf