UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

MICHAEL GIELLO,

    Plaintiff,

-VS-

                                        CASE NO.: 9:18-cv-81450-RLR

OCWEN LOAN SERVICING, LLC,

    Defendant.
_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Michael Giello (hereinafter "Plaintiff"), by and through the undersigned counsel, and sues Defendant, Ocwen Loan Servicing, LLC (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. Defendant's principal place of business is in Palm Beach County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. § 1391(b)(1) as it is the judicial district in the State where the Defendant resides.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Pennsylvania, residing in Bucks County, Pennsylvania.

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant is a corporation which was formed in Delaware with its principal place of business located at 1661 Worthington Road, Unit 100, West Palm Beach, Florida 33409, and which conducts business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

16. Defendant called Plaintiff on Plaintiff's cellular telephone hundreds of times in an attempt to collect a debt.

17. Defendant attempted to collect an alleged debt associated with a home loan from Plaintiff by this campaign of telephone calls.

18. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or

pre-recorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls").

19. Plaintiff will testify that he knew it was an auto-dialer because of the vast number of calls he received, which came from various different phone numbers, and because he heard a pause or beep when he answered his cellular telephone before a voice came on the line, which is a common indicator of the use of an ATDS.

20. Plaintiff believes he heard the pause when the auto-dialer was connecting him to an available agent as the dialer itself actually called Plaintiff, not an actual human being. Once Plaintiff answered, the dialer then connected the Plaintiff to an agent, which took several seconds.

21. Furthermore, Plaintiff received pre-recorded voicemail messages from Defendant on his cellular telephone after he expressly revoked consent to receive further calls from Defendant.

22. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number 267-***-0727 and was the called party and recipient of Defendant's calls.

23. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone 267-***-0727 in an attempt to collect on a home loan.

24. On several occasions since the Defendant began calling Plaintiff on his aforementioned cellular telephone, Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone.

25. For example, at one point in or around mid-2014, Plaintiff first answered a call from Defendant and advised an agent to "stop calling" his cellular telephone number.

26. Plaintiff went on to ask the Defendant to stop calling his cellular telephone on multiple other occasions to no avail.

27. Despite multiple requests from the Plaintiff for the calls to stop, Defendant continued to place hundreds of calls to Plaintiff's cellular telephone, including up to three calls per day, multiple days per week. Nothing Plaintiff said could get Defendant to cease its endless campaign of harassing calls.

28. Even when Plaintiff made it clear to Defendant that he was unable to pay, and would make a payment when possible, Defendant would continue calling, including multiple calls per day on the days immediately following Plaintiff advising Defendant of his financial situation.

29. Defendant knew Plaintiff was unable to make his payments and continued to bombard him with automated calls in an effort to harass or intimidate him into making a payment.

30. Defendant's agents made it clear to Plaintiff that they had no control over the automated system and therefore could not stop the harassing phone calls.

31. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

32. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

33. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

34. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

35. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

36. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

37. Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

38. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

39. Not a single call placed by Defendant to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

40. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

41. From each and every call placed without consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

42. From each and every call without express consent placed by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the cellular telephone unavailable for legitimate callers or outgoing calls while the cellular telephone was ringing from Defendant's calls.

43. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time.

For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the cellular telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the cellular telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

45. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

46. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's cellular telephone or network.

47. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

48. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, nervousness, anger, worry, and aggravation.

## COUNT I
### (Violation of the TCPA)

49. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

50. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he wished for the calls to stop.

51. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Ocwen Loan Servicing, LLC, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

52. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

53. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

54. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

55. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

56. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Ocwen Loan Servicing, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/Frank H. Kerney, III, Esquire
Frank H. Kerney, III, Esquire
Florida Bar #: 88672
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
fkerney@forthepeople.com
snazario@forthepeople.com
*Counsel for Plaintiff*